# Sterling Coal Co., Appellant, *v.* Reed et al.

*Equity—Equity practice—Retention of bill—Mines and mining rights—Costs.*

1. Where a bill in equity is filed by a coal mining company, owning a seam of coal, against another company owning other seams of coal in the same land, to restrain the construction of a railway on the surface, and it appears that defendant owns the surface, and that plaintiff has a right to use the surface, and the court finds as a fact that defendant's proposed railway will not interfere with proposed improvements by plaintiff not yet begun, the court should not dismiss the bill while directing that defendant may proceed with their construction but so as not to interfere with plaintiff's rights.

2. In such case, the bill should be retained to insure that plaintiff's rights shall be maintained when it proceeds to exercise them.

3. Under the circumstances of this case, the costs were imposed on defendant.

Argued April 19, 1926.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 8, March T., 1926, by plaintiff, from decree of C. P. Cambria Co., June T., 1923, No. 5, dismissing bill in equity, in case of Sterling Coal Co. v. E. P. Reed and Robert B. Reed, trading as Reed Coal Company.   Reversed.

Bill for injunction.   Before McCANN, J.
The opinion of the Supreme Court states the facts.
Bill dismissed.   Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*F. J. Hartman,* with him *Charles S. Evans,* for appellant.

*Walter Jones,* with him *George W. Griffith* and *Philip N. Shettig,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, May 26, 1926:

On August 4, 1917, E. P. Reed, one of the defendants, and others, granted and conveyed to plaintiff corporation all the coal contained in what is known as the "B" seam under the Annie Reffner tract in Cambria County with "the full and exclusive privilege, right and liberty of entering at will upon any and all parts of said land and......mining, raising, delivering, taking and carrying away said coal;......of constructing and building such roads and railroad for free ingress, egress and regress and for the transportation and removal of said coal and......other commodities, such as are usual and

necessary in mining and shipping and transporting the said coal......with the right to use said roads and railroads in transporting through or under said land any coal now or hereafter owned, leased, or operated by the said [plaintiff],......underlying other lands; of erecting, building and maintaining such fixtures, shutes, air shafts, drifts, houses, buildings, machinery, sidings, offices, shops and all other structures necessary and convenient for the mining, preparing and shipping of coal......; of using sufficient room on said lands to mine, put, pile and keep the said coal......and the rubbish and waste of the......mines......as well as of doing all other acts and things concerning the mining and .....removing.....of said coal.....from or under..... all parts of said lands by the said [plaintiff]......as fully as if [it] were the actual owners of said land." The grantors reserved to themselves such mining rights and privileges as may be necessary in the mining of coal in the land other than the "B" seam, with the proviso "that none of such rights and privileges shall be exercised so as to interfere with, inconvenience or annoy in any way the [plaintiff]......in the possession and operation of said 'B' seam of coal......It being the intention of the parties to this indenture that the parties of the first part......hereby reserve sufficient rights for the full and complete mining and removal of the coal contained in the seams or strata of coal lying above the 'B' seam of coal and lying below the 'B' seam of coal; ......but the exercise of such rights shall in no wise interfere with or inconvenience the [plaintiff] in the operation of the coal in the 'B' seam of coal," with a further proviso that the mining rights conveyed to plaintiff in connection with the "B" seam should not be so construed by it as to preclude the grantors from mining and removing the coal under and over the "B" seam "so long as such mining and removal of such overlying and underlying seams of coal shall not interfere with the operations of [plaintiff]."

Reciting the foregoing deed and its provisions, plaintiff filed this bill in which it was set forth that defendants had projected and commenced the construction of a railroad siding across the land under which plaintiff's "B" seam of coal lay which will seriously interfere with and inconvenience plaintiff in the exercise of the rights and privileges granted to it. These allegations on hearing were supported by the testimony of mining engineers and others. They were denied by defendant's witnesses.

The chancellor who heard the case,—after finding that plaintiff has a large area of unmined coal in the "B" seam on the land in question and that it has in contemplation the installation of a new operation on the tract for the purpose of mining the unmined coal in the seam, that the defendant, Reed Coal Mining Company, is the owner of the surface of the land and had projected a railroad siding across the same for use of a coal operation conducted by it on other lands and had done the grading therefor,—determined that what was about to be done by defendant would not interfere with the future operation and mining by plaintiff of the "B" seam upon the tract of land in question, that there is room upon the surface of the tract for the contemplated improvements of both parties and that plaintiff's proposed operation can be carried on without any material interference by defendant's railroad tracks. The chancellor found as a conclusion of law "That the Reed Coal Mining Company, defendant,......should be enjoined from interfering in any manner with the plaintiff in exercising its rights on the said Annie Reffner tract of land; but we are of the opinion that the proposed improvements of the Reed Coal Mining Company, defendant, will not inconvenience or annoy the plaintiff in the operation of its mine." The chancellor directed "That the bill of complaint should be dismissed. The defendant may proceed to construct its railway and improvements, but in so doing it must construct its road in such a location that

it will not physically interfere with, inconvenience, or annoy the plaintiff in its operations." In view of this direction to defendant, of the quoted conclusion of law, and of the fact that plaintiff has not yet commenced its operation on the land, we are of opinion that the court erred in dismissing the bill, that it should have been retained to insure that plaintiff's rights shall be maintained when it proceeds to exercise them. We also conclude that under the facts as they manifest themselves by a reading of the entire record it was improper to impose any of the costs on plaintiff.

The decree of the court below dismissing plaintiff's bill of complaint and directing each party to pay its own costs is reversed, the bill is reinstated with directions to the court below to retain it until such time as plaintiff shall have proceeded with and completed its improvements on the said Annie Reffner tract necessary to the mining by it of the "B" seam of coal therein, to the end that, if necessary, defendant may be enjoined from interfering with plaintiff's rights and privileges should equity and justice so require. It is further ordered that defendant pay all costs in this court; other costs to abide the event.